IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CORNERSTONE FINANCIAL GROUP, LLC, | § § § | No. 1:25-CV-01150-DAE |
| Plaintiff, | § § | |
| vs. | § § § | |
| MARYSA KIMBALL CAPLAN, Individually and as Custodian for KARENNA CAPLAN and COURTNEY CAPLAN; RELIASTAR LIFE INSURANCE COMPANY; and RESOLUTION LIFE US | § § § § § § § | |
| Defendants. | § § | |

ORDER

Before the Court are: (1) Defendants Marysa Kimball Caplan, Karenna Caplan, and Courtney Caplan's ("Caplans" or "Defendant") Motion to Dismiss Plaintiff Cornerstone Financial Group, LLC's ("Cornerstone" or "Plaintiff") First Amended Petition, (Dkt. # 15); (2) Defendants' Motion to Dismiss ReliaStar Life Insurance Company's ("ReliaStar") Counterclaim in Interpleader, (Dkt. # 11); (3) ReliaStar's Motion for Interpleader Deposit, (Dkt. # 10); and (4) Defendants' Motion to Strike Plaintiff's Reply in Support of its Motion for Summary Judgment, (Dkt. # 16.)  The Court finds a hearing on this matter is not necessary.

After careful consideration of the memoranda filed in support of and in opposition to the motion, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Cornerstone's Complaint (Dkt. # 15); **DENIES** Defendants' Motion to Strike as **MOOT** (Dkt. # 16); **GRANTS IN PART AND DENIES IN PART** ReliaStar's Motion for Interpleader Deposit (Dkt. # 10); and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss ReliaStar's Interpleader Counterclaim (Dkt. # 11.)  Plaintiff's Motion for Summary Judgment (Dkt. # 25) remains pending before this Court and will be decided by separate order.

BACKGROUND

Plaintiff Cornerstone Financial Group, LLC initially brought this action in state court alleging it is entitled to a portion of the life insurance proceeds from the late George Caplan.  (See Dkt. # 1-1.)  As alleged in Cornerstone's First Amended Petition, the operative complaint in this case, George Caplan borrowed $900,000 from Cornerstone, memorialized in three promissory notes.  (Dkt. # 1-15 at ¶ 12.)  The promissory notes included an agreement that George Caplan would include Cornerstone as a beneficiary on his life insurance policy, and he and his wife signed a beneficiary designation allocating $800,000 from the Policy to Cornerstone.  (Id.)  Cornerstone alleges that before his death, George Caplan changed his beneficiary designation to exclude Cornerstone as a beneficiary.  (Id.)

2

Thus, after Mr. Caplan's death, Cornerstone was denied disbursement of the funds it alleges it is owed.  (Id. at ¶ 1.)

Plaintiff's suit was brought against the (1) Caplan Defendants and the Estate, and (2) ReliaStar Life Insurance Company and Resolution Life US, both named *in rem* only.  (Id.)  After the Caplans filed an Original Cross-Claim in the state court action, ReliaStar removed this action to federal court.  (Dkt. # 1.)  ReliaStar subsequently filed its answer and counterclaim in interpleader.  (Dkt. # 2.)

Shortly after removal, ReliaStar filed a Motion for Interpleader Deposit, asking to interplead the contested $800,000 and be discharged from liability in this case.  (Dkt. # 10.)  The same day, the Caplan Defendants filed a Motion to Dismiss ReliaStar's Interpleader Counterclaim.  (Dkt. # 11.)  The Caplans then filed a Motion to Dismiss Cornerstone's First Amended Petition (Dkt. # 15) and a Motion to Strike evidence contained in Cornerstone's reply in support of its state court summary judgment motion.  (Dkt. # 16.)  All motions are opposed and the parties have timely filed responses and replies.

LEGAL STANDARD

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all

3

well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a Court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, a court reviewing a complaint "[is] not bound to accept as true a legal conclusion couched as a factual allegation." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted).

4

<u>ANALYSIS</u>

The Court begins with the Caplan Defendants' Motion to Dismiss Cornerstone's Amended Petition, then turns to the interpleader deposit questions and remaining motions in the case.

I.    <u>Caplans' Motion to Dismiss Cornerstone's First Amended Petition</u>

The Caplan Defendants move to dismiss Cornerstone's First Amended Petition pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative, under Rule 12(c).  (Dkt. # 15.)  Cornerstone's Complaint alleges the following causes of action: (1) fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"); (2) conspiracy to commit fraudulent transfer; (3) tortious interference with contract; (4) breach of contract related to the promissory notes; and (5) breach of contract related to an alleged settlement agreement.  (Dkt. # 1-15.)  The Motion to Dismiss is targeted primarily at the first three causes of action and at certain relief sought.  (Dkt. # 15.)  The Court will address each contested cause of action in turn.

A.    <u>Fraudulent Transfer Claim under TUFTA</u>

The Texas Uniform Fraudulent Transfer Act's ("TUFTA") "purpose is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach."  <u>Janvey v. Golf Channel, Inc.</u>, 487 S.W.3d 560, 566 (Tex. 2016) (citing <u>KCM Fin. LLC v. Bradshaw</u>, 457 S.W.3d 70, 89 (Tex. 2015)).

"Under TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims." Id. "A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made . . . , if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1). A "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code Ann. § 24.002(12).

Defendants' Motion to Dismiss contends that Plaintiff's TUFTA claim fails because it has not plausibly alleged the transfer of any "asset," nor alleged that Marysa Caplan is a "transferee." (Dkt. # 15 at 3–4.) An "asset" is defined under TUFTA as the "property of a debtor." Tex. Bus. & Com. Code Ann. § 24.002(2). Defendants say that a beneficiary designation on a life insurance policy is not "property of a debtor" subject to TUFTA because the debtor does not own the death benefit—only a contingent interest that vests upon the insured's death. (Dkt. # 15 at 3.)

Plaintiff argues that the term "property" within the meaning of all Texas statutes explicitly includes "life insurance policies, and *the effects of life*

6

*insurance policies*." Tex. Gov. Code § 312.011(13) (emphases added). However, as Defendant points out, there is a distinction between a life insurance policy and a revocable beneficiary designation. (Dkt. # 24 at 2.) A revocable beneficiary designation is rather merely an interest which does not vest until the death of the insured party. See Hunt v. Jefferson-Pilot Life Ins. Co., 900 S.W.2d 453, 456 (Tex. App.—Fort Worth 1995, writ denied) ("The beneficiary of a life insurance policy has an interest in the policy in the nature of an expectancy which matures into a vested right upon the death of the insured.").

Thus, Plaintiff's allegations that the beneficiaries of Mr. Caplan's life insurance policy were altered to exclude Cornerstone before his death are insufficient to support a TUFTA claim. Plaintiff's first cause of action should be **DISMISSED**. Further, because the conspiracy claim is derivative of the TUFTA claim, Plaintiff's claim for conspiracy to commit fraudulent transfer should also be **DISMISSED**. See Agar Corp., Inc. v. Electro Circuits Int'l, LLC, 580 S.W.3d 136, 141 (Tex. 2019).

B.    Tortious Interference with Contract Claim

To state a claim for tortious interference with a contract under Texas state law, Plaintiff must allege the following elements: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the

7

plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." Cmty Health Sys. Pro. Servs. Corp. v. Hansen, 525 S.W.3d 671, 689 (Tex. 2017).

Defendants argue that Plaintiff's Tortious Interference claim does should not survive its 12(b)(6) motion because the pleadings do not allege the existence of a "protectable contract right," intent to interfere, or interference. (Dkt. # 15 at 5.) Plaintiffs contend all elements are adequately pleaded.

As to the existence of a contract, the Court finds that Plaintiff's allegations are sufficient to meet this element. Plaintiff alleges that George Caplan and Cornerstone had an agreement memorialized in promissory notes that "George would maintain a life insurance beneficiary designation in favor of Cornerstone to secure repayment in the event of his death." (Dkt. # 1-15 at ¶12.) At this early stage, this allegation is sufficient; the Court declines to address disputes regarding whether that agreement was binding on both parties at the motion to dismiss stage.

On the second element, Plaintiff alleges that Marysa Caplan intentionally interfered with the contract. Specifically, Plaintiff alleges that Marysa Caplan changed the beneficiary along with George "with actual intent to hinder, delay, or defraud Cornerstone as a creditor of George," (Dkt. # 1-15 at ¶ 13), and that they "collectively took action to change the Policy beneficiary designation to wrongfully exclude Cornerstone in breach of George's obligation and Cornerstone's rights." (Id.) As Cornerstone notes in the Complaint, it has not

8

yet had the benefit of discovery to investigate the actions of George and Marysa Caplan. Thus, at this stage, the Court finds that these allegations, though predicated on sparse factual background, are enough to survive a motion to dismiss.

Defendants counter that the mere fact Marysa Caplan's signature was on as the spouse signature line when the beneficiaries were changed "constitutes exercise of her own legal rights rather than tortious interference with another's contract." (Dkt. # 15 at 6.) However, this raises only a factual dispute about whether Marysa Caplan did, in fact, intend to interfere with an agreement between George Caplan and Cornerstone—not whether Plaintiff has adequately pleaded allegations that, viewed in its favor, withstand a motion to dismiss.

Finally, neither party appears to contest that Plaintiff has adequately pleaded causation or damages. (See Dkt. # 15.) Accordingly, Plaintiff's tortious interference claims may proceed beyond the motion to dismiss stage.

C.    Plaintiff's Claims for Equitable Relief

Defendants finally assert that Plaintiff's request for equitable relief fails under Texas Insurance Code § 1108.051(b). Under that provision, insurance benefits "inure exclusively to the benefit of the person for whose use and benefit the insurance or annuity is designated in the policy or contract" and are "fully exempt from . . . seizure, appropriation, or application by any legal or equitable

9

process or by operation of law to pay a debt or other liability of an insurance or of a beneficiary, either before or after the benefits are provided[.]" Tex. Ins. Code §1108.051(b). Plaintiff acknowledges this provision in its response but asserts that an exception applies where "a debt of the insured or beneficiary [was] secured by a pledge of the insurance policy or the proceeds of the policy." Id. at § 1108.053(2).

Here, Plaintiff has alleged sufficient facts to raise a question of whether the exception applies. Defendants argue it does not because Plaintiff does not plead any facts showing a valid written assignment or pledge ever occurred, as required by California law to "secure" its interest. (Dkt. # 24 at 6.) However, Plaintiff does allege that George Caplan agreed to make Cornerstone a beneficiary "to secure payment of George's debt," (Dkt. # 1-15 at ¶ 1) and that this was done so that Cornerstone may "secure repayment in the event of his death." (Id. at ¶ 12.) Taking these allegations as true, the Court need not decide at this stage the sufficiency of such an agreement and whether it properly created a perfected security interest within the meaning of California law. The procedural posture of this case requires the Court to view the pleaded facts "in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d at 205. Thus, Plaintiffs have done enough at this stage to proceed with their requests for equitable relief.

II.    Caplans' Motion to Strike

The Caplan Defendants additionally bring a Motion to Strike New Evidence in Cornerstone's Reply in Support of its Motion for Partial Summary Judgment.  (Dkt. # 16.)  In this Motion, the Caplan Defendants argue that evidence attached to Cornerstone's Reply in Support of its Motion for Summary Judgment (Dkt. # 13) should be stricken because Cornerstone did not seek leave of the Court before including the evidence, and the Caplan Defendants did not have a chance to respond.  (Dkt. # 16.)  However, upon reviewing the filing the Caplans complain of, the Court finds that Cornerstone's Reply at Docket Entry # 13 is directed toward a motion for summary judgment filed in state court before the case was removed.  Additionally, Cornerstone has since brought a new Motion for Summary Judgment in federal court which remains pending before this Court.  (Dkt. # 25.) The Court thus finds it is appropriate to **DENY** Defendants' motion as **MOOT**. (Dkt. # 16).

III.    ReliaStar's Counterclaim in Interpleader

Because the issues at the core of ReliaStar's Motion for Interpleader Deposit (Dkt. # 10) and Defendants' Motion to Dismiss ReliaStar's Interpleader Counterclaim (Dkt. # 11) are the same, the Court discusses them together.

ReliaStar is the insurance company through which George Caplan maintained a life insurance policy.  (Dkt. # 10 at 2.)  It now holds the disputed

11

funds at issue in this case.  (Id.)  ReliaStar seeks interpleader relief pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1335.  (Dkt. # 2.)  In ReliaStar's Motion for Interpleader Deposit, it seeks leave to deposit the disputed death benefit in the amount of $800,000 with the court's registry because "it is unsure as to whom it should be paid because it has received competing claims." (Id.)  Additionally, ReliaStar seeks discharge from this action and an order enjoining either party from maintaining any future action or claim against it if those claims relate to the policy or death benefit at issue here.  (Dkt. # 10 at 10.)

The Caplan Defendants oppose this motion and filed a separate Motion to Dismiss ReliaStar's Interpleader Counterclaim.  (Dkt. ## 11, 18.)  They argue that ReliaStar failed to allege facts sufficient to support their interpleader counterclaim and urge the Court to dismiss it entirely.  (Dkt. # 11.)  Plaintiff Cornerstone appears unopposed to ReliaStar's Motion for Interpleader Deposit.

The Court reincorporates the legal standard for a Rule 12(b)(6) motion discussed *supra*.  "In the context of an interpleader action, 'failure to state a claim upon which relief can be granted' means that the plaintiff has not satisfied the requirements of an interpleader action—therefore it has not stated a claim pursuant to Rule 22 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1335."  State Farm Life Ins. Co. v. Beard, 1:22-CV-59, 2022 WL 17726680 (E.D. Tex. 2022).

The purpose of interpleader as a procedural device is "to shield a stakeholder . . . from liability when faced with the threat of multiple inconsistent claims to a single fund by allowing the stakeholder to tender that fund to the court in lieu of defending against multiple possible lawsuits." Tittle v. Enron, Corp., 463 F.3d 410, 423 (5th Cir. 2006) (citing Rhoades, 196 F.3d at 600 n.8). "There are two types of interpleader: rule interpleader pursuant to Fed. R. Civ. P. 22 and statutory interpleader under 28 U.S.C. § 1335. They differ in jurisdictional requirements but not in substance." Auto Parts Mfg. Miss., Inc. v. King Constr. of Hous., L.L.C., 782 F.3d 186, 192 (5th Cir. 2015).

"An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." Rhoades v. Casey, 196 F.3d 592, 600 (5th Cir. 1999) (citation omitted). If the requirements are met, "[a] court considers the merits of the claimants' claims to the fund and the proper distribution of the fund[.]" Auto Parts Mfg. Miss., 782 F.3d at 193.

A. Whether the Requirements of Interpleader Have Been Met

"In determining whether interpleader is proper in the first stage, the district court does not 'consider whether the competing claims are meritorious,' as the first stage of this analysis concerns only 'whether multiple claims have been

13

asserted, or may be asserted, against a disinterested stakeholder, not whether those claims have merit.'" State Farm Life Ins. Co. v. Bryant, No. 3:18-CV-1628, 2019 WL 7938266, at *9 (N.D. Tex. May 16, 2019) (quoting Auto Parts Mfg. Mississippi, Inc., 782 F.3d at 194). The party seeking interpleader "must demonstrate that it legitimately fears double or multiple claims directed against a single fund." Id. (citing Airborne Freight Corp. v. United States, 195 F.3d 238, 240 (5th Cir. 1999)).

However, "claims for interpleader are to be construed liberally" and "even the mere threat of multiple vexation by future litigation provides sufficient basis for interpleader." Tittle v. Enron Corp., 463 F.3d 410, 424 n.10 (5th Cir. 2006); see Connecticut Gen. Life Insur. Co. v. Wermelinger, 114 F.3d 1181 (5th Cir. 1997).

Here, the parties do not appear to dispute that there is a single fund at issue: the unpaid portion of the death benefit in the amount of $800,000. Further, there are multiple, adverse claims to this amount. Throughout the filings in this action, Cornerstone asserts it is entitled to $800,000, and the Caplan Defendants assert they are entitled to the same. Thus, the existence of this action itself makes clear that there are competing adverse claims to the contested amount.

The Caplan Defendants assert ReliaStar's counterclaim in interpleader should be dismissed because they have not alleged facts suggesting there is a

14

legitimate risk of multiple liability.  (Dkt. # 11 at 3.)  It supports this theory by suggesting that ReliaStar needed to allege facts that plausibly show Cornerstone's claim to the disputed death benefit is legitimate.  (Dkt. # 11 at 5–6.)  However, it would be nonsensical to require ReliaStar to plead Cornerstone's case, effectively restating arguments already made by each party to justify its own interpleader relief; there is no such requirement.  See Auto Parts Mfg. Mississippi, Inc., 782 F.3d at 194 ("It is not for the district court, in determining whether interpleader is proper, to consider whether the competing claims are meritorious.").  If "even the mere threat of multiple vexation by future litigation provides sufficient basis for interpleader[,]" surely the existence of a suit with two adverse parties laying claim to the same death benefit is sufficient to state a claim in interpleader.  See Tittle, 463 F.3d at 424 n.10.

Thus, the Court finds that ReliaStar has met the statutory requirements for interpleader.  See 28 U.S.C. § 1335.

B.  Whether Discharge of ReliaStar is Appropriate

Having found that ReliaStar properly seeks interpleader relief, the Court is now tasked with determining whether it should be discharged from this action and whether it is entitled to the injunctive relief it seeks.  (Dkt. # 10.)

"Once a district court concludes that the requirements for interpleader have been met, it may discharge the plaintiff-stakeholder if the stakeholder is a

15

disinterested party willing to tender the disputed funds." Berry v. Banner Life Ins. Co., 718 Fed. App'x 259, 263 (5th Cir. 2018) (citing Auto Parts Mfg. Miss., Inc., 782 F.3d at 195.) Interpleader actions thus shield disinterested stakeholders from liability where the claims against them are not independent of the disputed fund. Westlake Styrene, LLC v. U.S., 2011 WL 643265, at *2 (S.D. Tex. 2011) ("Claims against a stakeholder that are not independent of the interpleaded fund, such as a claim that the stakeholder should have paid the fund to a particular claimant rather than seek interpleader, are routinely dismissed because they would deprive the stakeholder of the intended benefit of an interpleader action."). However, when "a claimant brings an *independent* counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." United of Omaha Life Ins. Co. v. Womack-Rodriguez, 461 F.Supp.3d 455, 471 (W.D. Tex. 2020) (quoting Prudential Ins. Co. of America v. Hovis, 553 F.3d 258, 264 (3d Cir. 2009)) (emphasis added). "[A]ny stakeholder that is in substantial controversy with one of the claimants does not qualify as a disinterested stakeholder." Id. (citing Westlake Styrene, 2011 WL 643265, at *2).

Here, there is a dispute about whether ReliaStar is a disinterested party. The Caplan Defendants argue that ReliaStar should not be discharged because the Caplan Defendants have pending crossclaims against ReliaStar that

16

have not yet been disposed of. (Dkt. # 11 at 7; Dkt. # 18 at 5.) ReliaStar counters

that the crossclaims against it fail because they are not *independent* of the

underlying dispute over which party is entitled to the remaining death benefit.

(Dkt. # 22 at 6.)

Defendants' crossclaims against ReliaStar include the following

causes of action: (1) Prompt Payment of Claims Act claim pursuant to Tex. Ins.

Code §§ 542.051-.060; (2) Unfair Settlement Practices under the Texas Deceptive

Trade Practices Act ("DTPA"); and (3) breach of contract. (Dkt. # 1-13.) The

discharge of ReliaStar, and thus dismissal of the crossclaims, turns on whether the

claims are properly "independent" of the underlying death benefit dispute between

Cornerstone and the Caplans.

"Chapter 542 of the Texas Insurance Code is known as the Prompt

Pay Statute." Primerica Life Ins. Co. v. Gross, No. 1:15-CV-759-DAE, 2018 WL

2181101, at *8 (W.D. Tex. Mar. 27, 2018) (citing Tex. Ins. Code Ann. §§

542.051–542.061). To state a claim under the Prompt Pay Statute, the Caplans

must allege:

> (1) the [claimant] had a claim under an insurance policy; (2) the
> [claimant] gave proper notice of its claim to the insurer; (3) the insurer
> is liable for the claim; and (4) the insurer violated Chapter 542 by not
> timely (a) acknowledging receipt of the claim, commencing any
> investigation of the claim, and requesting from the claimant all items,
> statements, and forms that the insurer reasonably believes, at the time,
> will be required from the claimant; (b) accepting, rejecting, or

17

extending the deadline for deciding the claim; and (c) paying the claim.

Id. (citing Tex. Ins. Code Ann. §§ 542.051, 542.055, 542.056, 542.058, 542.060). Here, the Caplans allege that they had a claim under George Caplan's life insurance policy, that they submitted their claim to ReliaStar on or about November 8, 2024, and that ReliaStar violated the Prompt Pay Statute by not acknowledging receipt of the claim, notifying the beneficiaries of the delay or denial, not requesting more time, and not paying the benefit until July of 2025. (Dkt. # 1-13 at 2–4.)

ReliaStar points out that other district courts have found that Prompt Pay Act claims are not independent of underlying claims for the proceeds of the policy.  Indeed, one Northern District of Texas court found that one party's "Prompt Payment Act claims are based on nothing more than her frustration regarding [the interpleader's] failure to pay out the disputed funds to her. . . . Thus, her claims are barred by interpleader protection." State Farm Life Ins. Co. v. Wisocki, 3:23-CV-00597-K-BT, 2025 WL 793649, at *5 (N.D. Tex. Feb. 21, 2025).  However, the Caplan Defendants maintain that this cause of action extends beyond the $800,000 at dispute here; instead, unlike in Wisocki, they argue that the Prompt Pay Act claims are also directed toward violations in connection with the delay in payment of the remaining $4.2 million and accompanying interest.  (Dkt. # 18 at 6.)  The Court agrees that at least part of this claim is thus independent

18

from the dispute between Cornerstone and the Caplans;[1] accordingly, the Court finds it improper to discharge ReliaStar entirely from this case.  See Womack-Rodriguez, 461 F.Supp.3d at 471.

Therefore, the Court **GRANTS IN PART AND DENIES IN PART** ReliaStar's Motion for Interpleader Deposit (Dkt. # 10) and **GRANTS IN PART AND DENIES IN PART** the Caplan Defendants' Motion to Dismiss ReliaStar's Interpleader Counterclaims.  (Dkt. # 11.)

CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DEIES IN PART** the Caplan Defendants' Motion to Dismiss Cornerstone's First Amended Petition.  (Dkt. # 15).  Specifically, this Motion is **GRANTED** as to Plaintiff's TUFTA and conspiracy claims and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Caplan Defendants' Motion to Strike is **DENIED** as **MOOT.** (Dkt. # 16.)

---

[1] In so ruling, the Court reserves its judgment as to the viability of the remaining crossclaims and on the Prompt Pay Act claims concerning the contested $800,000. Indeed, some of these crossclaims appear merely derivative of the parties' claims to the death benefit.  However, because the Court has found that at least one claim is "independent," this is sufficient to refute ReliaStar's contention that it is merely a disinterested stakeholder.  Should ReliaStar wish to dismiss the crossclaims against it, it may move separately to do so.  For the same reasons, the Court need not consider ReliaStar's request for attorney's fees at this time.

**IT IS FURTHER ORDERED** that ReliaStar's Motion for Interpleader Deposit (Dkt. # 10) is **GRANTED IN PART AND DENIED IN PART**. This Motion is **GRANTED** as to ReliaStar's request to deposit the disputed death benefit into the Court's registry and **DENIED** in all other respects. It is therefore **ORDERED** that the Clerk of Court receive and deposit into the Registry of the Court the amount of $800,000, plus the required statutory interest, which represents the Disputed Death Benefit for the Policy insuring George Caplan's life that competing claimants Cornerstone Financial Group and Marysa Kimball Caplan, individually and as custodian for Karenna and Courtney Caplan, dispute. These funds shall remain in the Registry of the Court until further order from this Court.

        **IT IS FINALLY ORDERED** that the Caplan Defendants' Motion to Dismiss ReliaStar's Interpleader Counterclaim is **GRANTED IN PART AND DENIED IN PART**. (Dkt. # 11.) This Motion is **GRANTED** to the extent Defendant seeks to prevent ReliaStar's discharge from this action and **DENIED** in all other respects.

        **IT IS SO ORDERED**.
        **DATED**: Austin, Texas, February 6, 2026

_____
David A. Ezra
Senior United States District Judge

20